In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1835

TISSUE TECHNOLOGY, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

TAK INVESTMENTS, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 14-C-1203 — **William C. Griesbach**, *Chief Judge*.

ARGUED OCTOBER 22, 2018 — DECIDED OCTOBER 29, 2018

Before FLAUM, EASTERBROOK, and SCUDDER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. In 2007 Tissue Technology and some affiliated entities, which the parties call the OFTI Group, sold a tissue mill in Oconto Falls, Wisconsin, to ST Paper, LLC, which is controlled by Tak Investments. Goldman Sachs agreed to finance the transaction, but during the financial crunch of 2007 it cut $19 million from the amount of money it was willing to invest. That presented OFTI with

a problem: it had promised to give ST Paper clean title to the mill, but with the reduced financing it would be unable to pay off everyone who held a security interest. To help solve this problem, Tak Investments agreed to issue four negotiable notes, face values aggregating about $16 million, to OFTI, which would offer the notes to the creditors as substitute security. The creditors accepted the notes, and the transaction closed. (Factual statements in this paragraph, and elsewhere in this opinion, come from findings the district court made after a bench trial. 320 F. Supp. 3d 993 (E.D. Wis. 2018).)

The notes provided for 8% annual interest, with 10% of the principal payable at the end of the first year, another 10% at the end of the second, and the final 80% at the end of the third. In a side agreement, OFTI promised to pay the notes itself during the first three years (after which they should have been fully paid). This meant that the lenders who released their security in the tissue mill had the credit of both Tak and OFTI behind the notes' promises. The parties contemplated that Tak would hire a construction firm affiliated with OFTI to build at least $315 million worth of new tissue mills. The contracts provided that, if this occurred, Tak would not have to pay the notes. They also provided that, if Tak did not arrange for this construction (which the documents called "Phase 2 Financing"), and Tak also did not pay the notes' principal and interest, then OFTI could cancel the notes and acquire a 27% interest in Tak. That would be difficult to accomplish as long as the lienholders held onto the notes as substitute collateral. But if OFTI paid off the debt secured by the notes and regained possession of these instruments, and Tak refused to pay, OFTI could deem the notes cancelled and receive an equity interest.

Tak never paid a penny on the notes it issued. Nor did OFTI comply with its obligation to pay during the first three years. The new tissue mills did not materialize. OFTI then demanded that Tak transfer to it an equity interest worth 27% of the company. When Tak refused, OFTI filed this suit under the diversity jurisdiction. As far as the district judge could determine, some of the formerly secured creditors have not been paid and retain at least three of the promissory notes; but no matter who has the notes, the judge found, OFTI does not possess any of them. 320 F. Supp. 3d at 1003.

At an early stage of this suit the district judge concluded that, because Tak does not own itself, it cannot be compelled to issue the 27% interest OFTI seeks. A corporation may be compelled to issue shares, the judge recognized, but only the existing members of a limited liability company may be compelled to transfer ownership interests. As Tak Investments, LLC, is the sole defendant, the judge thought OFTI's preferred remedy unavailable. 2016 U.S. Dist. LEXIS 166682 (E.D. Wis. Dec. 2, 2016).

That was a misstep. Tak Investments is organized under Delaware law, to which the internal-affairs doctrine points as the source of rules about its powers. *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983). Delaware permits a limited liability company to issue membership interests in itself, just as a corporation may issue shares, even if that dilutes the interests of existing members. 6 Del. Code §18-301(b)(1). The two existing members of Tak Investments do not assert any contractual or statutory right to prevent the issuance of new interests under §18-301(b)(1), so Delaware law allows Tak to provide OFTI with an equity interest. But it became clear at trial that two other

considerations prevent OFTI from enforcing these notes against Tak.

A hold-harmless agreement is the first of these reasons. Paragraph 2(I) of one agreement between OFTI and Tak provides:

> Each member of the OFTI Group jointly and severally agrees to indemnify [Tak Investments] and to hold it harmless from and against any and all damages, losses, deficiencies, actions, demands, judgments, fines, fees, costs and expenses, including, without limitation, attorneys' fees, of or against [Tak Investments] resulting from enforcement of the Investment Notes by any member of the OFTI Group (other than the enforcement of the pledge described above), or any enforcement of or other claims made any [sic] other current or future holder of such Investment Notes against [Tak Investments] relating to the Investment Notes.

The district court concluded that this effectively prevents OFTI from enforcing the notes against Tak, because whatever Tak gave to OFTI would be returned in indemnification. 320 F. Supp. 3d at 999–1002. That conclusion is inescapable.

It makes business sense too. The notes were designed as security for third parties, not as compensation for OFTI. Perhaps, if OFTI paid the notes as it promised to do, it might be subrogated to the secured parties' rights and could collect from Tak in that capacity notwithstanding the indemnity that blocks direct enforcement. But as OFTI did not pay the notes, it has no rights that it could enforce against Tak without immediately turning around and giving the money or other benefits (such as the 27% interest) back to Tak under the indemnity. (We could imagine an argument that obligations arising from cancellation of the notes, as opposed to

their enforcement, are not subject to the hold-harmless agreement. But OFTI does not make that argument.)

The negotiability of the notes supplies the second reason. Each is payable to OFTI or another person it designates. Each was pledged to a lender to replace that lender's security interest in the tissue mill, enabling OFTI to convey clear title to Tak. As far as the district judge could tell, none of the four notes has been returned to OFTI. This led the judge to invoke Wis. Stat. §403.301, a part of Wisconsin's version of the Uniform Commercial Code applicable to negotiable instruments, which provides:

> "Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument under s. 403.309 or 403.418(4). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The judge concluded that OFTI is not entitled to enforce the notes because it is not their holder, is not in possession of them, and is not entitled to enforce them under either §403.309 or §403.418(4). 320 F. Supp. 3d at 1003. Section 403.309 deals with situations in which instruments have been lost, stolen, or destroyed, while §403.418(4) permits a person who paid an instrument by mistake to recover from the person who should have paid. Neither situation obtains here, which means that only the holders, or nonholders in possession, may enforce these negotiable notes.

And this, too, makes commercial sense. The notes replaced lenders' liens against the tissue mill. Until the debts have been repaid, the lenders need the notes as security. But if OFTI can use the fact of nonpayment as a reason to cancel

the notes, they will be worthless to the lenders. OFTI will have replaced their security with nothing, while reaping a substantial benefit for itself. If OFTI had paid the notes as it promised, and thus retired the loans, then it would recover the notes from the lenders and be able to enforce without the obstacle of §403.301. But it didn't, so it can't.

OFTI asserts that the secured parties themselves can't enforce the notes because OFTI failed to endorse them before giving them in pledge as collateral. See Wis. Stat. §§ 403.203, 409.313. That may well be true. But OFTI does not explain why this avoids §403.301, which links enforcement to possession. The lenders who hold the notes in pledge may have a legal right to compel OFTI to endorse them to facilitate enforcement; that is some distance from giving OFTI a right to leave the lenders in the lurch and take all of the notes' benefits for itself. The district judge was right to withhold any remedy that would transfer the value of the notes from the secured lenders to OFTI.

AFFIRMED